WALTERS, &c.
vs.
CRUTCHER, &c.

---

PET. EQ.

Case 2.

## Walters, &c. *vs.* Crutcher, &c.

### APPEAL FROM JESSAMINE CIRCUIT.

1. A devise was "to the wife of the testator for life, and at her death to S. W., in trust for the use" of the testator's four children by name, "during their lives, and at their death, or the death of either of them; one equal fourth part to their children, should they have any, and their heirs forever; but should either of them die without leaving a child or children, their part is to go to the children of the others." Held—that the devise was to the children of the others as a class, and that there was no intention manifested that the children of the others, where one died without children, should take in the place of their parent, or in any other manner than they would take under a general devise to them as grand-children; they constituted but one class, and take *per capita*, and not by representation.

2. When distribution is to take place under a will at the death of a tenant for life, and to be amongst the children of the testator living at the termination of the life-estate, or the grand-children, if the child be dead, the grand-children in case of the death of one of the children then living, take as a class *per capita* as executory devisees, subject to be modified by the birth of children of one child then having no children; each grand-child takes an interest as born, which, in case of its death, passes to his legal representative.

In March, 1815, Peter Pollock died, having made and published his will—which was duly proved and recorded—by which he devised all his slaves, by name, "to his wife, Mary Pollock, during her natural life," and at her death he devised "said slaves to Stephen Walter, in trust for the use of his four children, John Pollock, William Pollock, Sally Crutcher, and Betsy Stonestreet, during their lives, and at their deaths, or the death of either of them," he "gave and bequeathed their one equal fourth part to their children, should they have any, and their heirs forever; but should either of them die without leaving a child or children, their part is to go the children of the others."

William Pollock died in April, 1816, without leaving any child; John Pollock in July, 1832, also childless; Mary Pollock died in April, 1822. At the death of William Pollock, in 1816, Betsy Stonestreet had no child; Sally Crutcher had two children, to-wit: Paulina, now Paulina Campbell, and Peter Crutcher. At the death of Mary Pollock, in 1822, Betsy Stonestreet, who had intermarried with Richard Walters, had two children living, Mary Ann and Stephen; a third child, called David, was born in 1816, but died in 1821, before Mary Pollock's death. At the death of Mary Pollock, Sally Crutcher had five children living, to-wit: Pauline, Peter, Martha Ann, Mary E., and Serepta. Mary Ann died in 1839, childless. At the death of John Pollock, in 1832, Betsey Walter had five living children, to-wit: Mary Ann, Stephen, James, Peter P., and Levi. At the same time Sally Crutcher had nine children living, to-wit: Pauline, Peter W., Martha Ann, Mary E., Serepta, James, Catharine, Elizabeth, Thomas B., and Norvell. The husband of Sally Crutcher died in 1848, intestate, and there has been no administration; before his death two of his children by Sally Crutcher died, who were living at the death of John Pollock, to-wit: Martha Ann and Catharine; neither of the two last name had any child.

WALTERS, &c.
vs.
CRUTCHER, &c.

Two partitions were made, one in 1822 and the other in 1832, which were upon the principles of representation.

This suit is brought by the children of Sally Crutcher for a division of the slaves and their increase, devised by the will of Peter Pollock as before stated. The Circuit Court decreed one-fourth of the slaves to Sally Crutcher, one-fourth to Betsy Walters, to be held according to the will of her father. The interest of John and William Pollock was decreed to be divided *per capita* between the children of Betsy Walters and Sally Crutcher living at the time of the respective deaths of William and John Pollock. The interest of William Pollock, who died before the determination of the life estate, to be held by the two children then born, subject to be divested *pro tanto*, as the number of the grand-children might increase by births during the pendency of the life estate. To reverse that opinion this appeal is prosecuted by R. Walters.

*Geo. Robertson*, for appellant—

The constructive effect of the devise remainder "to the children of the others," presents the principal question on this appeal; and this includes two questions: 1. What children took the shares of William and John Pollock? 2. Did they take *per capita* or *per stirpes?*

1. As the widow, Mary Pollock, had a right to all the slaves until her death, in April, 1822, all the children of Walters and Crutcher born before that time were, as decided by the court below, entitled to William Pollock's portion, who had died in 1816. The same rule applies to the share of John Pollock, who died in 1832, and extends to all the children born before his death. Upon this principle, the decree is right as to the share of William Pollock, eight children having been born before his death—five of Mrs. Crutcher and three of Mrs. Walters; but as to John Pollock's share, the decree is wrong. Before John

Pollock's death, Walters had seven children and Mrs. Crutcher nine: John Pollock's share should therefore be distributed into sixteen instead of fourteen parts, and Richard Walters is entitled to three-fifteenths thereof, instead of two-fourteenths, for his daughter, born in 1826, though she lived but a short time, was at her death entitled to a vested interest in John Pollock's share, at his death without a child; and her father is therefore as much entitled to her interest as he is to the interest of his sons David or Stephen.

2. We contend that the children should take representatively; that the motive of the testator was representative rather than personal; that he intended that the children collectively should have what their mother would have been entitled to by law, after the termination of the life estate of John and William Pollock. There is no point of more difficulty or diversity of construction than that of a bequest in general terms "to children." A bequest to the children of A and the children of B would *prima facie* make their legatees *per capita*, as this is about as much as the authorities cited by the Circuit Judge show. But how would it be when a father bequeaths his personal estate to all his living children, and the children of one deceased child—his living children being three and the grand-children twelve, for example? In case of such unqualified bequest, would the estate be divided in fifteen parts, and each of the testator's three children be entitled only to one-fifteenth, and each of the twelve grand-children by one of his deceased children, be entitled to just as much as one of his own children? Would not such a construction be unreasonable and unjust? In such a case, the legacy would be distributed according to the statute of distributions. Such is the presumed intention of the testator, and there is abundant authority for this conclusion. In all such cases the term children is used collectively and representatively; and though it has been sometimes said, that if such a

WALTERS, &c.
*vs.*
CRUTCHER, &c.

legacy be directed "to be equally divided," then, *prima facie*, each of the grand children will take *per capita*, and as much as each of the children. This I would not admit; for "equally to be divided" would be satisfied by allotting to the grand-children their parent's portion, and the bequest to them being in collective terms, does not import any thing more. In this case, however, there is no such direction or qualification; but all the legacies in remainder stand in the same degree of propinquity to the testator, and in this respect our case is not exactly the one put above. It is the same however in reason and in principle. The mothers of the children being alive when the legacy to the latter accrued in possession, it is quite evident that in giving to their children instead of themselves, their father gave as he would have given them—that is, to the children of each just what he or the law would have given to the mothers, if he had not substituted their children, or had died intestate.

Two considerations appearing on the face of the will fortify this deduction: 1st. The life-estate of each of the testator's children is, after the legatee's death, directed to go to that legatee's children alone, if any—showing that the testator was influenced by the principle of representation. 2nd. Immediately before disposing of the remainder in the slaves, the testator provided, as to all other property, that after his wife's death it should be equally divided between his children, "or their representatives," thereby showing a determination that his grand-children, taking as his devisees, should take representatively—each set collectively through the parent and the parent's share. When in the next sentence he says, that if either of his children shall die childless, the slaves bequeathed to him or her shall go "to the children of the others," does he not, without affording any other clue to his purpose, mean that it shall go *as aforesaid*, on the principle of representation; that it shall go to the children, just as he had in the preceding sen-

tence said other property should go to children as representatives of their parents? What motive had he to make any distinction or change in the principle of the two bequests? And if he had intended to do so, why did he not manifest that purpose by some specific direction or qualification?

But, in addition to all this, is there anything in the will importing that merely because all were equally grand-children, each should take *per capita*, or co-equal parts? Without any intimation of a different intent, should not the testator be presumed to intend that in the event of the grand-children taking under his will, they should take as grand-children in the proportions prescribed by law in case of his intestacy, and the death of their parents? And would they not in such case take *per stirpes?* The testator's intention, consistent with law, should always prevail; and that intention should be collected from his words, the context, the pervading spirit, his relations, probable motives, and from the analogies of the law. We contend that the children of Mrs. Crutcher and Mrs. Walters should take *per stirpes*.

The fact that two divisions were made—one in 1822, the other in 1832—shows that those then interested understood the will as now contended for by appellants; and this creates an independent equitable obligation not to change or undo what in families was satisfactorily done so long ago; and injustice will ensue. Some slaves have died, others have been born, and all have become domesticated and attached to families, &c. All these constitute objections to a re-division.

But we insist that the partition of 1832 was legal and binding. It was certainly not intended by the testator that there should be no partition of the slaves amongst his children; he intended to secure to them the several use of the slaves during their respective lives, and then to secure the remainder. He therefore appointed a trustee, not to keep the slaves in his possession, or hire them out during the

lives of the legatees, but to secure the title merely, permitting each tenant for life to enjoy his or her one equal fourth of the slaves—for which purpose a division was indispensable. If the testator had intended that all the slaves should be hired out during the lives of the particular tenants, would he not have said something upon that subject? And as he did not, had not each of his children a right to the use of one-fourth for life, and to a partition for that purpose? And are the children in remainder entitled to more than their parents' one-fourth as so fixed, or to the fourth as so fixed of any life-tenant dying without a child? And when William Pollock died, and when John Pollock died, were not their fourths allotable? and by whom, unless by the trustees and their parents? These partitions will not be disturbed now further than is absolutely necessary to effectuate justice, if it cannot be done otherwise; and we trust that things will stand as they have been arranged; first, because they were arranged on the right basis and fairly; next, because the parents and curators construed the will and did for the children what they believed the testator intended, and all parties have acquiesced for twenty years and more, and should now be estopped from speculating on contingency and time. Old Mr. Walters is in the sterling sense a good man; he has devoted the prime of his life to Mrs. Crutcher and children, and these ungrateful children are trying to oppress him.

The foregoing considerations should certainly be deemed sufficient for reversing the decree directing the commissioner to divide the slaves without any regard to a former division: But trusting to the *per stirpes* principle and interpretation, we hope for a radical reversal.

*Geo. S. Shanklin*, for appellees—

In addition to the various authorities referred to by the Circuit Court in support of the principles of law upon which the decree in this case was based, we

find the doctrine most clearly settled by the courts of
South Carolina, that when heirs take by purchase
they are not to take as heirs, but as a class of persons to whom, by that means, the testator has selected to devise his property, and as they take in their own right, the distribution is to be made *per capita* and not *per stirpes.* (*Campbell vs. Wiggins*, 1 *Rice's Eq. Rep.* 10; *Conner vs. Johnson*, 2 *Hill*, 44.) The court, in the case of Campbell vs. Wiggins, said: "When the persons intended to take under a grant or devise are described as a class without designating the portions in which they are to take, all are equally entitled who can bring themselves within the description." The same principle of law seems to prevail in case of descent. If A have three children, B, C, and D, and they all die, B leaving two children, C three, and D four, and A dies intestate, in that case all his grand-children shall have equal shares, for as the children are all dead, the grandchildren shall take as next of kin; in this case they take *per capita.* (*Toller's Law of Executors*, 376.)

We think these authorities, with those referred to by the Circuit Judge, fully sustain the decree in this case.

The following authorities are referred to in the opinion of the circuit judge, viz: 2 *Powell on Devisees*, 304, 331; 2 *Williams on Ex'ors.* 917; *Turner vs. Patterson*, 5 *Dana*, 296; *Duncan vs. Rafferty's Administrators*, 6 *J. J. Marshall*, 47.

Judge SIMPSON delivered the opinion of the court.

The testator, Peter Pollock, devised his slaves in trust for his four children during their lives, and at their death, or the death of either of them, their one-fourth part to their children, should they leave any, and their heirs forever; but should either of them die without leaving a child or children, their part to go to the children of the others.

Two of the testator's children having died without issue, the question arises, whether the children of

WALTERS, &c.
vs.
CRUTCHER, &c.

1. A devise was "to the wife of the testator for life, and at her death to S. W., in trust for the use" of the testator's 4 children by name, "during their lives, and at their death, or the death of either of them, one equal fourth part to their children, should they have any, and their heirs forever; but should either of them die without leaving a child or children, their part is to go to the children of the others." Held, that the devise was to the children of the others as a class, and that there was no intention manifested that the children of the others, where one died without children, should take in the place of their parent, or in any other manner than they would take under a general devise to them as grand children; they constituted but one class, and take *per capita*, and not by representation.

2. When distribution is to take place under a will at the death of a tenant for life, and to be amongst the other two take their shares under the will *per capita* or *per stirpes*.

The devise is to the children of the others, as one class. There is nothing in the will that indicates an intention on the part of the testator that the children of the others, where one died without children, were to take in the place of their parent, or the share of their parent, or in any other manner than they would take under a general devise to them as grand-children. They constitute but one class of devisees, and must take *per capita* and not by representation.

As the distribution was to take place under the will, at the death of the tenant for life, all the children who were born before that period, were, as decided by the court below, entitled to William Pollock's part of the estate, he having died during the continuance of the life-estate.

As it respects John Pollock's fourth of the estate, he having died without children, all the children of his two sisters, that had been born alive, whether living or not at the time of his death, took an interest in it, under the will. It was an executory bequest, that vested in the children as they came *in esse*, subject to be divested upon the contingency of John's having children of his own. (1 *Roper on Legacies*, 402.) It is not the uncertainty of ever taking effect in possession that makes a remainder contingent: "The present capacity of taking effect in possession, if the possession were to become vacant, and not the certainty that the possession will become vacant, before the estate limited in remainder determines, universally distinguishes a vested remainder from one that is contingent." (2 *Cruise Digest*, 270; 2 *vol. Chitty's Black*. 169, *note* 10.) Now, in this case, each child as it was born was capable of taking the estate under the will, if the possession had become vacant during its life, and consequently it took a vested interest, which on its death passed to its legal representatives. The children of the testator's daughter Betsey took therefore seven-sixteenths of John's portion

of the estate, instead of five-fourteenths, as decided by the court below—she having had seven children born alive, before his death.

In making partition, respect should be had to the former division of the slaves made by the parties themselves, and each family should, as far as practicable without doing injustice to the other; be permitted to retain the slaves they have had in their possession, to the extent of the interest to which they may be respectively entitled, according to the principles of this opinion. The decree in relation to the heirs is only interlocutory, and no question at this time can arise under it.

Wherefore, the decree is reversed, and cause remanded that such a decree may be rendered and such partition made as herein indicated.

the children of the testator living at the termination of the life estate, or the grand-children, if the child be dead, the grand-children, in case of the death of one of the children then living, take as a class per capita as executory devisees, subject to be modified by the birth of children of one child then having no children; each grand-child takes an interest as born, which, in case of its death, passes to his legal representative.